**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF IOWA**
**CENTRAL DIVISION**

| | |
|---|---|
| **MARIA CLEMENTS and JOHNNIE JONES,** on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> **PURFOODS, LLC d/b/a "MOM'S MEALS"** <br><br> Defendant. | Case No. <br><br><br> **JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiffs Maria Clements and Johnnie Jones ("Plaintiffs"), individually and on behalf of all similarly situated persons, allege the following against PurFoods, LLC d/b/a "Mom's Meals" ("PurFoods" or "Defendant") based upon personal knowledge with respect to themselves and on information and belief derived from, among other things, investigation by Plaintiffs' counsel and review of public documents as to all other matters:

### I.    INTRODUCTION

1.    Plaintiffs bring this class action against PurFoods for its failure to properly secure and safeguard Plaintiffs' and other similarly situated PurFoods customers' personally identifiable information ("PII") and protected health information ("PHI"), including name, billing information, date of birth, diagnosis code, health insurance information, meal category and/or cost, and treatment information (the "Private Information"), from criminal hackers.

2.      PurFoods, based in Ankeny, Iowa, is a meal delivery service company that serves tens of thousands of individuals across the country.

3.      On or about August 25, 2023, PurFoods filed official notice of a hacking incident with the Maine Attorney General's Office. Under state and federal law, organizations must report breaches involving PHI within at least sixty (60) days.

4.      On or around the same time, PurFoods also sent out data breach letters (the "Notice") to individuals whose information was compromised as a result of the hacking incident.

5.      Based on the Notice filed by Defendant, unusual activity was detected on some of its computer systems. In response, Defendant launched an investigation which revealed that an unauthorized party accessed, encrypted, and likely exfiltrated certain files that contained sensitive customer information, and that such access took place between January 16 and February 22, 2023 (the "Data Breach"). Yet, PurFoods waited *six months* to notify the public that they were at risk.

6.      As a result of this delayed response, Plaintiffs and "Class Members" (defined below) had no idea for roughly six months that their Private Information had been compromised, and that they were, and continue to be, at significant risk of identity theft and various other forms of personal, social, and financial harm. The risk will remain for their respective lifetimes.

7.      The Private Information compromised in the Data Breach contained highly sensitive customer data, representing a gold mine for data thieves. The data included, but is not limited to, billing information, diagnosis codes, health insurance information, and treatment information that PurFoods collected and maintained.

8.      Armed with the Private Information accessed in the Data Breach (and a head start), data thieves can commit a variety of crimes including, *e.g.*, opening new financial accounts in Class Members' names, taking out loans in Class Members' names, using Class Members' names

to obtain medical services, using Class Members' information to obtain government benefits, filing fraudulent tax returns using Class Members' information, obtaining driver's licenses in Class Members' names but with another person's photograph, and giving false information to police during an arrest.

9.     There has been no assurance offered by PurFoods that all personal data or copies of data have been recovered or destroyed, or that Defendant has adequately enhanced its data security practices sufficient to avoid a similar breach of its network in the future.

10.    Therefore, Plaintiffs and Class Members have suffered and are at an imminent, immediate, and continuing increased risk of suffering, ascertainable losses in the form of harm from identity theft and other fraudulent misuse of their Private Information, the loss of the benefit of their bargain, out-of-pocket expenses incurred to remedy or mitigate the effects of the Data Breach, and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach.

11.    Plaintiffs bring this class action lawsuit to address PurFoods' inadequate safeguarding of Class Members' Private Information that it collected and maintained, and its failure to provide timely and adequate notice to Plaintiffs and Class Members of the types of information that were accessed, and that such information was subject to unauthorized access by cybercriminals.

12.    The potential for improper disclosure and theft of Plaintiffs' and Class Members' Private Information was a known risk to PurFoods, and thus PurFoods was on notice that failing to take necessary steps to secure the Private Information left it vulnerable to an attack.

13.    Upon information and belief, PurFoods failed to properly monitor and implement adequate data security practices with regard to the computer network and systems that housed the

Private Information. Had PurFoods properly monitored its networks, it could have prevented the Data Breach or at least discovered it sooner.

14.     Plaintiffs' and Class Members' identities are now at risk because of PurFoods' negligent conduct as the Private Information that PurFoods collected and maintained is now in the hands of data thieves and other unauthorized third parties.

15.     Plaintiffs seek to remedy these harms on behalf of themselves and all similarly situated individuals whose Private Information was accessed and/or compromised during the Data Breach.

## II.     PARTIES

16.     Plaintiff Maria Clements is, and at all times mentioned herein was, an individual citizen of the State of California.

17.     Plaintiff Johnnie Jones is, and at all times mentioned herein was, an individual citizen of the State of Georgia.

18.     Defendant PurFoods is a limited liability company organized under the laws of the State of Iowa, with its principal place of business at 3210 SE Corporate Woods Drive, Ankeny, Iowa, in Polk County.

## III.     JURISDICTION AND VENUE

19.     The Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. Upon information and belief, the number of class members is over 100, many of whom have different citizenship from PurFoods. Thus, minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A).

20.    This Court has jurisdiction over PurFoods because PurFoods operates in and/or is incorporated in this District.

21.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1) because a substantial part of the events giving rise to this action occurred in this District and PurFoods has harmed Class Members residing in this District.

## IV.    FACTUAL ALLEGATIONS

### A.  *PurFoods' Business and Collection of Plaintiffs' and Class Members' Private Information*

22.    PurFoods is a meal deliver services company located in Iowa and serving tens of thousands of customers around the country.

23.    As a condition of receiving meal delivery services services, PurFoods requires that its customers entrust it with highly sensitive personal and health information. In the ordinary course of receiving service from PurFoods, Plaintiffs and Class Members were required to provide their Private Information to Defendant.

24.    In its Notice of Privacy Practices, PurFoods promises its customers that it is "committed to protecting the confidentiality of [its customers'] health information" and says that it is required by law to do so.[1] PurFoods also describes in its Privacy Policy the limited specific instances when it shares customer health information and says that it will otherwise share customers' information only with the customers' "written permission."[2]

25.    Thus, due to the highly sensitive and personal nature of the information PurFoods acquires and stores with respect to its customers, PurFoods, upon information and belief, promises

---

[1] *See* https://www.purfoods.com/webres/File/Website%20Privacy%20Policy.pdf (last visited on September 6, 2023).

[2] *Id.*

5

to, among other things: keep customers' Private Information private; comply with industry standards related to data security and the maintenance of its customers' Private Information; inform its customers of its legal duties relating to data security and comply with all federal and state laws protecting customers' Private Information; only use and release customers' Private Information for reasons that relate to the services it provides; and provide adequate notice to customers if their Private Information is disclosed without authorization.

26.     By obtaining, collecting, using, and deriving a benefit from Plaintiffs' and Class Members' Private Information, PurFoods assumed legal and equitable duties it owed to them and knew or should have known that it was responsible for protecting Plaintiffs' and Class Members' Private Information from unauthorized disclosure and exfiltration.

27.     Plaintiffs and Class Members relied on PurFoods to keep their Private Information confidential and securely maintained and to only make authorized disclosures of this Information, which Defendant ultimately failed to do.

**B.   The Data Breach and Defendant's Inadequate Notice to Plaintiffs and Class Members**

28.     According to Defendant's Notice, it learned of unauthorized access to its computer systems on or around February 22, 2023, with such unauthorized access having taken place between January 16 and February 22, 2023.

29.     Through the Data Breach, the unauthorized cybercriminal(s) accessed and exfiltrated a cache of highly sensitive Private Information, including diagnosis code, health insurance information, and treatment information.

30.     On or about August 24, 2023, *six months* after PurFoods learned that the Class's Private Information was first accessed by cybercriminals, PurFoods finally began to notify

customers that its investigation determined that their Private Information accessed, encrypted, and likely exfiltrated.

31.    PurFoods had obligations created by contract, industry standards, common law, and representations made to Plaintiffs and Class Members to keep Plaintiffs' and Class Members' Private Information confidential and to protect it from unauthorized access and disclosure.

32.    Plaintiffs and Class Members provided their Private Information to PurFoods with the reasonable expectation and mutual understanding that PurFoods would comply with its obligations to keep such Information confidential and secure from unauthorized access and to provide timely notice of any security breaches.

33.    PurFoods' data security obligations were particularly important given the substantial increase in cyberattacks in recent years.

34.    PurFoods knew or should have known that its electronic records would be targeted by cybercriminals.

### C.  The Healthcare Sector is Particularly Susceptible to Data Breaches

35.    PurFoods was on notice that companies in the healthcare industry are susceptible targets for data breaches.

36.    PurFoods was also on notice that the FBI has been concerned about data security in the healthcare industry. In August 2014, after a cyberattack on Community Health Systems, Inc., the FBI warned companies within the healthcare industry that hackers were targeting them. The warning stated that "[t]he FBI has observed malicious actors targeting healthcare related

systems, perhaps for the purpose of obtaining the Protected Healthcare Information (PHI) and/or Personally Identifiable Information (PHI)."[3]

37.     The healthcare sector reported the second largest number of data breaches among all measured sectors in 2018, with the highest rate of exposure per breach.[4] In 2022, the largest growth in compromises occurred in the healthcare sector.[5]

38.     Indeed, when compromised, healthcare related data is among the most sensitive and personally consequential. A report focusing on healthcare breaches found that the "average total cost to resolve an identity theft-related incident … came to about $20,000," and that the victims were often forced to pay out-of-pocket costs for healthcare they did not receive in order to restore coverage.[6]

39.     Almost 50 percent of the victims lost their healthcare coverage as a result of the incident, while nearly 30 percent said their insurance premiums went up after the event. Forty percent of the customers were never able to resolve their identity theft at all. Data breaches and identity theft have a crippling effect on individuals and detrimentally impact the economy as a whole.[7]

---

[3] Jim Finkle, *FBI Warns Healthcare Firms that they are Targeted by Hackers*, Reuters (Aug. 2014), *available at* https://www.reuters.com/article/us-cybersecurity-healthcare-fbi/fbi-warns-healthcare-firms-they-are-targeted-by-hackers-idUSKBN0GK24U20140820 (last visited on September 6, 2023).

[4] Identity Theft Resource Center, *2018 End-of-Year Data Breach Report, available at*: https://www.idtheftcenter.org/2018-data-breaches/ (last visited on September 6, 2023).

[5] Identity Theft Resource Center, *2022 End-of-Yeare Data Breach Report, available at*: https://www.idtheftcenter.org/wp-content/uploads/2023/01/ITRC_2022-Data-Breach-Report_Final-1.pdf (last visited on September 6, 2023).

[6] Elinor Mills, *Study: Medical identity theft is costly for victims*, CNET (March 3, 2010), *available at:* https://www.cnet.com/news/privacy/study-medical-identity-theft-is-costly-for-victims/ (last visited on September 6, 2023).

[7] *Id.*

40.     Healthcare related breaches have continued to rapidly increase because electronic data is seen as a valuable asset. Companies operating within the healthcare industry "have emerged as a primary target because they sit on a gold mine of sensitive personally identifiable information for thousands of patients at any given time. From social security and insurance policies, to next of kin and credit cards, no other organization, including credit bureaus, have so much monetizable information stored in their data centers."[8]

41.     As a company that operates within the healthcare industry and maintains highly sensitive PII and PHI, PurFoods knew, or should have known, the importance of safeguarding its customers' Private Information, including PHI, entrusted to it, and of the foreseeable consequences if such data were to be disclosed. These consequences include the significant costs that would be imposed on PurFoods' customers as a result of a breach. PurFoods failed, however, to take adequate cybersecurity measures to prevent the Data Breach from occurring.

**D. PurFoods Failed to Comply with HIPAA**

42.     Title II of HIPAA contains what are known as the Administration Simplification provisions. *See* 42 U.S.C. §§ 1301, *et seq*. These provisions require that the Department of Health and Human Services ("HHS") create rules to streamline the standards for handling PHI similar to the data Defendant left unguarded and vulnerable to attack. The HHS has subsequently promulgated five rules under authority of the Administrative Simplification provisions of HIPAA.

43.     PurFoods' Data Breach resulted from a combination of insufficiencies that indicate PurFoods failed to comply with safeguards mandated by HIPAA regulations and industry standards. First, it can be inferred from PurFoods' Data Breach that PurFoods either failed to

---

[8] Inside Digital Health, *How to Safeguard Hospital Data from Email Spoofing Attacks*, April 4, 2019, *available at*: https://www.chiefhealthcareexecutive.com/view/how-to-safeguard-hospital-data-from-email-spoofing-attacks (last visited on September 6, 2023).

implement, or inadequately implemented, information security policies or procedures to protect Plaintiffs' and Class Members' PHI.

44.      Plaintiffs' and Class Members' Private Information compromised in the Data Breach included "protected health information" as defined by CFR § 160.103.

45.      45 CFR § 164.402 defines "breach" as "the acquisition, access, use, or disclosure of protected health information in a manner not permitted under subpart E of this part which compromises the security or privacy of the protected health information."

46.      45 CFR § 164.402 defines "unsecured protected health information" as "protected health information that is not rendered unusable, unreadable, or indecipherable to unauthorized persons through the use of a technology or methodology specified by the [HHS] Secretary[.]"

47.      Plaintiffs' and Class Members' Private Information included "unsecured protected health information" as defined by 45 CFR § 164.402.

48.      Plaintiffs' and Class Members' unsecured PHI was acquired, accessed, used, and/or disclosed in a manner not permitted under 45 CFR, Subpart E, as a result of the Data Breach.

49.      Based upon Defendant's Notice to Plaintiffs and Class Members, PurFoods reasonably believes that Plaintiffs' and Class Members' unsecured PHI has been acquired, accessed, used, and/or disclosed in a manner not permitted under 45 CFR, Subpart E, as a result of the Data Breach.

50.      Plaintiffs' and Class Members' unsecured PHI that was acquired, accessed, used, and/or disclosed in a manner not permitted under 45 CFR, Subpart E as a result of the Data Breach was not rendered unusable, unreadable, or indecipherable to unauthorized persons.

51.      PurFoods reasonably believes that Plaintiffs' and Class Members' unsecured PHI that was acquired, accessed, used, and/or disclosed in a manner not permitted under 45 CFR,

Subpart E as a result of the Data Breach was not rendered unusable, unreadable, or indecipherable to unauthorized persons.

52.    Plaintiffs' and Class Members' unsecured PHI that was acquired, accessed, used, and/or disclosed in a manner not permitted under 45 CFR, Subpart E as a result of the Data Breach, and which was not rendered unusable, unreadable, or indecipherable to unauthorized persons, was viewed by unauthorized persons.

53.    Plaintiffs' and Class Members' unsecured PHI was viewed by unauthorized persons in a manner not permitted under 45 CFR, Subpart E as a result of the Data Breach.

54.    PurFoods reasonably believes that Plaintiffs' and Class Members' unsecured PHI was viewed by unauthorized persons in a manner not permitted under 45 CFR, Subpart E as a result of the Data Breach.

55.    It is reasonable to infer that Plaintiffs' and Class Members' unsecured PHI that was acquired, accessed, used, and/or disclosed in a manner not permitted under 45 CFR, Subpart E as a result of the Data Breach, and which was not rendered unusable, unreadable, or indecipherable to unauthorized persons, was viewed by unauthorized persons.

56.    It should be rebuttably presumed that unsecured PHI acquired, accessed, used, and/or disclosed in a manner not permitted under 45 CFR, Subpart E, and which was not rendered unusable, unreadable, or indecipherable to unauthorized persons, was viewed by unauthorized persons.

57.    After receiving notice that they were victims of the Data Breach (which required the filing of a data breach report in accordance with 45 CFR § 164.408(a)), it is reasonable for recipients of that notice, including Plaintiffs and Class Members in this case, to believe that future

harm (including medical identity theft) is real and imminent, and to take steps necessary to mitigate that risk of future harm.

58.     In addition, PurFoods' Data Breach could have been prevented if PurFoods had implemented HIPAA mandated, industry standard policies and procedures for securely disposing of PHI when it was no longer necessary and/or had honored its obligations to its customers.

59.     PurFoods' security failures also include, but are not limited to:

a.  Failing to maintain an adequate data security system to prevent data loss;

b.  Failing to mitigate the risks of a data breach and loss of data;

c.  Failing to ensure the confidentiality and integrity of electronic protected health information PurFoods creates, receives, maintains, and transmits in violation of 45 CFR 164.306(a)(1);

d.  Failing to implement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights in violation of 45 CFR 164.312(a)(1);

e.  Failing to implement policies and procedures to prevent, detect, contain, and correct security violations in violation of 45 CFR 164.308(a)(1);

f.  Failing to identify and respond to suspected or known security incidents;

g.  Failing to mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity, in violation of 45 CFR 164.308(a)(6)(ii);

h.  Failing to protect against any reasonably-anticipated threats or hazards to the security or integrity of electronic protected health information, in violation of 45 CFR 164.306(a)(2);

i.   Failing to protect against any reasonably anticipated uses or disclosures of electronic protected health information that are not permitted under the privacy rules regarding individually identifiable health information, in violation of 45 CFR 164.306(a)(3);

j.   Failing to ensure compliance with HIPAA security standard rules by Defendant's workforce, in violation of 45 CFR 164.306(a)(94); and

k.   Impermissibly and improperly using and disclosing protected health information that is and remains accessible to unauthorized persons, in violation of 45 CFR 164.502, *et seq.*

60.    The HIPAA Breach Notification Rule, 45 CFR §§ 164.400-414 also required PurFoods to provide notice of the Data Breach to each affected individual "without unreasonable delay and *in no case later than 60 days following discovery of the breach*" (emphasis added).

61.    Because PurFoods has failed to comply with HIPAA, while monetary relief may cure some of Plaintiffs' and Class Members' injuries, injunctive relief is also necessary to ensure PurFoods' approach to information security is adequate and appropriate going forward. PurFoods still maintains the PHI and other highly sensitive PII of its current and former customers, including Plaintiffs and Class Members. Without the supervision of the Court through injunctive relief, Plaintiffs' and Class Members' Private Information remains at risk of subsequent data breaches.

### E.  PurFoods Failed to Comply with FTC Guidelines

62.    The Federal Trade Commission ("FTC") has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision making. Indeed, the FTC has concluded that a company's failure to maintain reasonable and

13

appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. *See, e.g., FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

63.    In October 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established cybersecurity guidelines for businesses. The guidelines note that businesses should protect the personal customer information that they keep, properly dispose of personal information that is no longer needed, encrypt information stored on computer networks, understand their network's vulnerabilities, and implement policies to correct any security problems. The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs, monitor all incoming traffic for activity indicating someone is attempting to hack into the system, watch for large amounts of data being transmitted from the system, and have a response plan ready in the event of a breach.

64.    The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction, limit access to sensitive data, require complex passwords to be used on networks, use industry-tested methods for security, monitor the network for suspicious activity, and verify that third-party service providers have implemented reasonable security measures.

65.    The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data by treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by the FTCA. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

66.     As evidenced by the Data Breach, PurFoods failed to properly implement basic data security practices. PurFoods' failure to employ reasonable and appropriate measures to protect against unauthorized access to Plaintiffs' and Class Members' Private Information constitutes an unfair act or practice prohibited by Section 5 of the FTCA.

67.     PurFoods was at all times fully aware of its obligation to protect the Private Information of its customers yet failed to comply with such obligations. Defendant was also aware of the significant repercussions that would result from its failure to do so.

### F.  PurFoods Failed to Comply with Industry Standards

68.     As noted above, experts studying cybersecurity routinely identify businesses as being particularly vulnerable to cyberattacks because of the value of the Private Information which they collect and maintain.

69.     Some industry best practices that should be implemented by businesses dealing with sensitive PHI like PurFoods include but are not limited to: educating all employees, strong password requirements, multilayer security including firewalls, anti-virus and anti-malware software, encryption, multi-factor authentication, backing up data, and limiting which employees can access sensitive data. As evidenced by the Data Breach, Defendant failed to follow some or all of these industry best practices.

70.     Other best cybersecurity practices that are standard in the industry include: installing appropriate malware detection software; monitoring and limiting network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers; monitoring and protecting physical security systems; and training staff regarding these points. As evidenced by the Data Breach, Defendant failed to follow these cybersecurity best practices.

71.    Defendant failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

72.    Defendant failed to comply with these accepted standards, thereby permitting the Data Breach to occur.

### G. *PurFoods Breached its Duty to Safeguard Plaintiffs' and Class Members' Private Information*

73.    In addition to its obligations under federal and state laws, PurFoods owed a duty to Plaintiffs and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the Private Information in its possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons. PurFoods owed a duty to Plaintiffs and Class Members to provide reasonable security, including consistency with industry standards and requirements, and to ensure that its computer systems, networks, and protocols adequately protected the Private Information of Class Members

74.    PurFoods breached its obligations to Plaintiffs and Class Members and/or was otherwise negligent and reckless because it failed to properly maintain and safeguard its computer systems and data. PurFoods' unlawful conduct includes, but is not limited to, the following acts and/or omissions:

a.    Failing to maintain an adequate data security system that would reduce the risk of data breaches and cyberattacks;

b.    Failing to adequately protect customers' Private Information;

16

      c.    Failing to properly monitor its own data security systems for existing intrusions;

      d.    Failing to sufficiently train its employees regarding the proper handling of its customers Private Information;

      e.    Failing to fully comply with FTC guidelines for cybersecurity in violation of the FTCA;

      f.    Failing to adhere to HIPAA and industry standards for cybersecurity as discussed above; and

      g.    Otherwise breaching its duties and obligations to protect Plaintiffs' and Class Members' Private Information.

75.    PurFoods negligently and unlawfully failed to safeguard Plaintiffs' and Class Members' Private Information by allowing cyberthieves to access its computer network and systems which contained unsecured and unencrypted Private Information.

76.    Had PurFoods remedied the deficiencies in its information storage and security systems, followed industry guidelines, and adopted security measures recommended by experts in the field, it could have prevented intrusion into its information storage and security systems and, ultimately, the theft of Plaintiffs' and Class Members' confidential Private Information.

77.    Accordingly, Plaintiffs' and Class Members' lives were severely disrupted. What's more, they have been harmed as a result of the Data Breach and now face an increased risk of future harm that includes, but is not limited to, fraud and identity theft. Plaintiffs and Class Members also lost the benefit of the bargain they made with PurFoods.

**H.  PurFoods Should Have Known that Cybercriminals Target PII and PHI to Carry Out Fraud and Identity Theft**

78.    The FTC hosted a workshop to discuss "informational injuries," which are injuries that consumers like Plaintiffs and Class Members suffer from privacy and security incidents such

as data breaches or unauthorized disclosure of data.[9] Exposure of highly sensitive personal information that a consumer wishes to keep private may cause harm to the consumer, such as the ability to obtain or keep employment. Consumers' loss of trust in e-commerce also deprives them of the benefits provided by the full range of goods and services available which can have negative impacts on daily life.

79.    Any victim of a data breach is exposed to serious ramifications regardless of the nature of the data that was breached. Indeed, the reason why criminals steal information is to monetize it. They do this by selling the spoils of their cyberattacks on the black market to identity thieves who desire to extort and harass victims or to take over victims' identities in order to engage in illegal financial transactions under the victims' names.

80.    Because a person's identity is akin to a puzzle, the more accurate pieces of data an identity thief obtains about a person, the easier it is for the thief to take on the victim's identity or to otherwise harass or track the victim. For example, armed with just a name and date of birth, a data thief can utilize a hacking technique referred to as "social engineering" to obtain even more information about a victim's identity, such as a person's login credentials or Social Security number. Social engineering is a form of hacking whereby a data thief uses previously acquired information to manipulate individuals into disclosing additional confidential or personal information through means such as spam phone calls and text messages or phishing emails.

81.    In fact, as technology advances, computer programs may scan the Internet with a wider scope to create a mosaic of information that may be used to link compromised information to an individual in ways that were not previously possible. This is known as the "mosaic effect."

---

[9] *FTC Information Injury Workshop, BE and BCP Staff Perspective,* Federal Trade Commission, (October 2018), *available at* https://www.ftc.gov/system/files/documents/reports/ftc-informational-injury-workshop-be-bcp-staff-perspective/informational_injury_workshop_staff_report_-_oct_2018_0.pdf (last visited on September 6, 2023).

Names and dates of birth, combined with contact information like telephone numbers and email addresses, are very valuable to hackers and identity thieves as it allows them to access users' other accounts.

82.    Thus, even if certain information was not purportedly involved in the Data Breach, the unauthorized parties could use Plaintiffs' and Class Members' Private Information to access accounts, including, but not limited to, email accounts and financial accounts, to engage in a wide variety of fraudulent activity against Plaintiffs and Class Members.

83.    For these reasons, the FTC recommends that identity theft victims take several time-consuming steps to protect their personal and financial information after a data breach, including contacting one of the credit bureaus to place a fraud alert on their account (and an extended fraud alert that lasts for 7 years if someone steals the victim's identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a freeze on their credit, and correcting their credit reports.[10] However, these steps do not guarantee protection from identity theft but can only mitigate identity theft's long-lasting negative impacts.

---

[10] *See IdentityTheft.gov,* Federal Trade Commission, *available at* https://www.identitytheft.gov/Steps (last visited September 6, 2023).

84.    In fact, a study by the Identity Theft Resource Center[11] shows the multitude of harms caused by fraudulent use of PII:



85.    PHI is also especially valuable to identity thieves.  As the FTC recognizes, identity thieves can use PHI to commit an array of crimes, including identity theft and medical and financial fraud.[12]

86.    Indeed, a robust cyber black market exists in which criminals openly post stolen PHI on multiple underground Internet websites, commonly referred to as the dark web.

---

[11] Steele, Jason, *Credit Card and ID Theft Statistics*, CreditCards.com (October 23, 2017), *available at* https://www.creditcards.com/credit-card-news/credit-card-security-id-theft-fraud-statistics-1276/ (last visited on September 6, 2023).

[12] Federal Trade Commission, *Warning Signs of Identity Theft, available at*: https://consumer.ftc.gov/articles/what-know-about-identity-theft (last visited on September 6, 2023).

87.     While credit card information and associated PII can sell for as little as $1-$2 on the black market, protected health information can sell for as much as $363 according to the Infosec Institute.[13]

88.     PHI is particularly valuable because criminals can use it to target victims with frauds and scams that take advantage of the victim's medical conditions or victim settlements. It can be used to create fake insurance claims, allowing for the purchase and resale of medical equipment, or gain access to prescriptions for illegal use or resale.

89.     Medical identity theft can result in inaccuracies in medical records and costly false claims. It can also have life-threatening consequences. If a victim's health information is mixed with other records, it can lead to misdiagnosis or mistreatment. "Medical identity theft is a growing and dangerous crime that leaves its victims with little to no recourse for recovery," reported Pam Dixon, executive director of World Privacy Forum. "Victims often experience financial repercussions and worse yet, they frequently discover erroneous information has been added to their personal medical files due to the thief's activities."[14]

90.     The ramifications of PurFoods' failure to keep its customers' Private Information secure are long lasting and severe. Once it is stolen, fraudulent use of such and damage to victims may continue for years.

91.     The value of both PII and PHI is axiomatic. The value of "big data" in corporate America is astronomical. The fact that identity thieves attempt to steal identities notwithstanding

---

[13] Center for Internet Security, *Data Breaches: In the Healthcare Sector, available at*: https://www.cisecurity.org/insights/blog/data-breaches-in-the-healthcare-sector (last visited on September 6, 2023).

[14] Michael Ollove, "The Rise of Medical Identity Theft in Healthcare," Kaiser Health News, Feb. 7, 2014, *available at*: https://kffhealthnews.org/news/rise-of-indentity-theft/ (last visited on September 6, 2023).

possible heavy prison sentences illustrates beyond a doubt that the Private Information compromised here has considerable market value.

92.     It must also be noted that there may be a substantial time lag between when harm occurs and when it is discovered, and also between when PII and/or PHI is stolen and when it is misused. According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:[15]

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.

93.     PII and PHI are such valuable commodities to identity thieves that once the information has been compromised, criminals often trade the information on the dark web for years.

94.     As a result, Plaintiffs and Class Members are at an increased risk of fraud and identity theft, including medical identity theft, for many years into the future. Thus, Plaintiffs and Class Members have no choice but to vigilantly monitor their accounts for many years to come.

**I.    *Plaintiffs' and Class Members' Damages***

*Plaintiff Clements's Experience*

95.     When Plaintiff Clements became a customer of PurFoods, it required her to provide it with substantial amounts of her PII and PHI.

---

[15] *Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown*, GAO (June 2007), *available at* https://www.gao.gov/assets/270/262904.html (last visited September 6, 2023).

96.    On or about August 24, 2023, Plaintiff Clements received a letter entitled "Notice of Data Breach" which told her that her PII and PHI had been accessed, encrypted, and likely exfiltrated during the Data Breach.

97.    The notice letter offered Plaintiff Clements only one year of credit monitoring services, which is not sufficient given that Plaintiff Clements will now experience a lifetime of increased risk of identity theft, including but not limited to, potential medical fraud.

98.    Plaintiff Clements suffered actual injury in the form of time spent dealing with the Data Breach and the increased risk of fraud resulting from the Data Breach and/or monitoring her accounts for fraud.

99.    Plaintiff Clements would not have provided her PII and PHI to Defendant had Defendant timely disclosed that its systems lacked adequate computer and data security practices to safeguard its customers' personal and health information from theft, and that those systems were subject to a data breach.

100.    Plaintiff Clements suffered actual injury in the form of having her PII and PHI compromised and/or stolen as a result of the Data Breach.

101.    Plaintiff Clements suffered actual injury in the form of damages to and diminution in the value of her personal, health, and financial information – a form of intangible property that Plaintiff Clements entrusted to Defendant for the purpose of receiving meal delivery services from Defendant and which was compromised in, and as a result of, the Data Breach.

102.    Plaintiff Clements suffered imminent and impending injury arising from the substantially increased risk of future fraud, identity theft, and misuse posed by her Private Information being placed in the hands of criminals.

103.    Plaintiff Clements has a continuing interest in ensuring that her PII and PHI, which remain in the possession of Defendant, are protected and safeguarded from future breaches.

104.    As a result of the Data Breach, Plaintiff Clements made reasonable efforts to mitigate the impact of the Data Breach, including but not limited to researching the Data Breach, reviewing financial accounts for any indications of actual or attempted identity theft or fraud, and researching the credit monitoring offered by Defendant. Plaintiff Clements has spent several hours dealing with the Data Breach, valuable time she otherwise would have spent on other activities.

105.    As a result of the Data Breach, Plaintiff Clements has suffered anxiety as a result of the release of her PII and PHI, which she believed would be protected from unauthorized access and disclosure. These feelings include anxiety about unauthorized parties viewing, selling, and/or using her PII and PHI for purposes of committing cyber and other crimes against her including, but not limited to, fraud and identity theft. Plaintiff Clements is very concerned about this increased, substantial, and continuing risk, as well as the consequences that identity theft and fraud resulting from the Data Breach would have on her life.

106.    Plaintiff Clements also suffered actual injury from having her Private Information compromised as a result of the Data Breach in the form of (a) damage to and diminution in the value of her PII and PHI, a form of property that Defendant obtained from Plaintiff Clements; (b) violation of her privacy rights; and (c) present, imminent, and impending injury arising from the increased risk of identity theft, and fraud she now faces.

107.    As a result of the Data Breach, Plaintiff Clements anticipates spending considerable time and money on an ongoing basis to try to mitigate and address the many harms caused by the Data Breach.

*Plaintiff Jones's Experience*

108.    When Plaintiff Jones became a customer of PurFoods, it required him to provide it with substantial amounts of his PII and PHI.

109.    On or about August 24, 2023, Plaintiff Clements received a letter entitled "Notice of Data Breach" which told him that his PII and PHI had been accessed, encrypted, and likely exfiltrated during the Data Breach.

110.    The notice letter offered Plaintiff Jones only one year of credit monitoring services, which is not sufficient given that Plaintiff Jones will now experience a lifetime of increased risk of identity theft, including but not limited to, potential medical fraud.

111.    Plaintiff Jones suffered actual injury in the form of time spent dealing with the Data Breach and the increased risk of fraud resulting from the Data Breach and/or monitoring his accounts for fraud.

112.    Plaintiff Jones would not have provided his PII and PHI to Defendant had Defendant timely disclosed that its systems lacked adequate computer and data security practices to safeguard its customers' personal and health information from theft, and that those systems were subject to a data breach.

113.    Plaintiff Jones suffered actual injury in the form of having his PII and PHI compromised and/or stolen as a result of the Data Breach.

114.    Plaintiff Jones suffered actual injury in the form of damages to and diminution in the value of his personal, health, and financial information – a form of intangible property that Plaintiff Jones entrusted to Defendant for the purpose of receiving meal delivery services from Defendant and which was compromised in, and as a result of, the Data Breach.

115.   Plaintiff Jones suffered imminent and impending injury arising from the substantially increased risk of future fraud, identity theft, and misuse posed by his Private Information being placed in the hands of criminals.

116.   Plaintiff Jones has a continuing interest in ensuring that his PII and PHI, which remain in the possession of Defendant, are protected and safeguarded from future breaches.

117.   As a result of the Data Breach, Plaintiff Jones made reasonable efforts to mitigate the impact of the Data Breach, including but not limited to researching the Data Breach, reviewing financial accounts for any indications of actual or attempted identity theft or fraud, and researching the credit monitoring offered by Defendant. Plaintiff Jones has spent several hours dealing with the Data Breach, valuable time he otherwise would have spent on other activities.

118.   As a result of the Data Breach, Plaintiff Jones has suffered anxiety as a result of the release of his PII and PHI, which he believed would be protected from unauthorized access and disclosure. These feelings include anxiety about unauthorized parties viewing, selling, and/or using his PII and PHI for purposes of committing cyber and other crimes against him including, but not limited to, fraud and identity theft. Plaintiff Jones is very concerned about this increased, substantial, and continuing risk, as well as the consequences that identity theft and fraud resulting from the Data Breach would have on his life.

119.   Plaintiff Jones also suffered actual injury from having his Private Information compromised as a result of the Data Breach in the form of (a) damage to and diminution in the value of his PII and PHI, a form of property that Defendant obtained from Plaintiff Jones; (b) violation of his privacy rights; and (c) present, imminent, and impending injury arising from the increased risk of identity theft, and fraud he now faces.

120.     As a result of the Data Breach, Plaintiff Jones anticipates spending considerable time and money on an ongoing basis to try to mitigate and address the many harms caused by the Data Breach.

121.     In sum, Plaintiffs and Class Members have been damaged by the compromise of their Private Information in the Data Breach.

122.     Plaintiffs and Class Members entrusted their Private Information to Defendant in order to receive Defendant's services.

123.     Their Private Information was subsequently compromised as a direct and proximate result of the Data Breach, which Data Breach resulted from Defendant's inadequate data security practices.

124.     As a direct and proximate result of PurFoods' actions and omissions, Plaintiffs and Class Members have been harmed and are at an imminent, immediate, and continuing increased risk of harm, including but not limited to, having medical services billed in their names, loans opened in their names, tax returns filed in their names, utility bills opened in their names, credit card accounts opened in their names, and other forms of identity theft.

125.     Further, and as set forth above, as a direct and proximate result of Defendant's conduct, Plaintiffs and Class Members have also been forced to take the time and effort to mitigate the actual and potential impact of the data breach on their everyday lives, including placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, closing or modifying financial accounts, and closely reviewing and monitoring bank accounts and credit reports for unauthorized activity for years to come.

126.    Plaintiffs and Class Members may also incur out-of-pocket costs for protective measures such as credit monitoring fees, credit report fees, credit freeze fees, and similar costs directly or indirectly related to the Data Breach.

127.    Plaintiffs and Class Members also face a substantial risk of being targeted in future phishing, data intrusion, and other illegal schemes through the misuse of their Private Information, since potential fraudsters will likely use such Private Information to carry out such targeted schemes against Plaintiffs and Class Members.

128.    The Private Information maintained by and stolen from Defendant's systems, combined with publicly available information, allows nefarious actors to assemble a detailed mosaic of Plaintiffs and Class Members, which can also be used to carry out targeted fraudulent schemes against Plaintiffs and Class Members.

129.    Plaintiffs and Class Members also lost the benefit of the bargain they made with PurFoods. Plaintiffs and Class Members (and/or their insurance) overpaid for services that were intended to be accompanied by adequate data security but were not. Indeed, part of the price paid by Plaintiffs and Class Members (or paid on their behalf) to PurFoods was intended to be used by PurFoods to fund adequate security of PurFoods' system and protect Plaintiffs' and Class Members' Private Information. Thus, Plaintiffs and the Class did not receive the benefit of the bargain.

130.    Additionally, Plaintiffs and Class Members also suffered a loss of value of their PII and PHI when it was acquired by cyber thieves in the Data Breach. Numerous courts have recognized the propriety of loss of value damages in related cases. An active and robust legitimate marketplace for Private Information also exists. In 2019, the data brokering industry was worth

roughly $200 billion.[16] In fact, the data marketplace is so sophisticated that consumers can sell their non-public information directly to a data broker who in turn aggregates the information and provides it to other companies.[17] Consumers who agree to provide their web browsing history to the Nielsen Corporation can in turn receive up to $50 a year.[18]

131.    As a result of the Data Breach, Plaintiffs' and Class Members' Private Information, which has an inherent market value in both legitimate and illegal markets, has been harmed and diminished due to its acquisition by cybercriminals. This transfer of valuable information happened with no consideration paid to Plaintiffs or Class Members for their property, resulting in an economic loss. Moreover, the Private Information is apparently readily available to others, and the rarity of the Private Information has been destroyed because it is no longer only held by Plaintiffs and the Class Members, and because that data no longer necessarily correlates only with activities undertaken by Plaintiffs and the Class Members, thereby causing additional loss of value.

132.    Finally, Plaintiffs and Class Members have suffered or will suffer actual injury as a direct and proximate result of the Data Breach in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach.

133.    Moreover, Plaintiffs and Class Members have an interest in ensuring that their Private Information, which is believed to still be in the possession of PurFoods, is protected from future breaches by the implementation of more adequate data security measures and safeguards, including but not limited to, ensuring that the storage of data or documents containing highly sensitive personal and health information of its customers is not accessible online, that access to such data is password-protected, and that such data is properly encrypted.

---

[16] See Data Coup, https://datacoup.com/.

[17] *What is digi.me?, DIGI.ME,* https://digi.me/what-is-digime/ (last visited Jan. 16, 2023).

[18] *Frequently Asked Questions,* Nielsen Computer & Mobile Panel, https://computermobilepanel.nielsen.com/ui/US/en/faqen.html (last visited Jan. 16, 2023).

134.    As a direct and proximate result of PurFoods' actions and inactions, Plaintiffs and Class Members have suffered a loss of privacy and have suffered cognizable harm, including an imminent and substantial future risk of harm, in the forms set forth above.

## V.    CLASS ACTION ALLEGATIONS

135.    Plaintiffs bring this action individually and on behalf of all other persons similarly situated, pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(1), 23(b)(2), and 23(b)(3).

136.    Specifically, Plaintiffs propose the following Nationwide Class, as well as the following State Subclass definitions (also collectively referred to herein as the "Class"), subject to amendment as appropriate:

**Nationwide Class**

All individuals in the United States who had Private Information accessed and/or acquired as a result of the Data Breach, including all who were sent a notice of the Data Breach.

**California Subclass**

All residents of California who had Private Information accessed and/or acquired as a result of the Data Breach, including all who were sent a notice of the Data Breach.

**Georgia Subclass**

All residents of Georgia who had Private Information accessed and/or acquired as a result of the Data Breach, including all who were sent a notice of the Data Breach.

137.    Excluded from the Class are Defendant and its parents or subsidiaries, any entities in which it has a controlling interest, as well as its officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns. Also excluded is any Judge to whom this case is assigned as well as their judicial staff and immediate family members.

138.    Plaintiffs reserve the right to modify or amend the definitions of the proposed Nationwide Class, as well as the California and Georgia Subclasses, before the Court determines whether certification is appropriate.

139.    The proposed Class meets the criteria for certification under Fed. R. Civ. P. 23(a), (b)(2), and (b)(3).

140.    <u>Numerosity</u>. The Class Members are so numerous that joinder of all members is impracticable. Though the exact number and identities of Class Members are unknown at this time, based on information and belief, the Class consists of over 1,200,000 customers of PurFoods whose data was compromised in the Data Breach. The identities of Class Members are ascertainable through PurFoods' records, Class Members' records, publication notice, self-identification, and other means.

141.    <u>Commonality</u>. There are questions of law and fact common to the Class which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

a.    Whether PurFoods engaged in the conduct alleged herein;

b.    Whether PurFoods' conduct violated the FTCA, HIPAA, and/or the California Consumer Privacy Act, the California Consumer Records Act, the California Unfair Competition Act, and the California Consumer Legal Remedies Act;

c.    When PurFoods learned of the Data Breach

d.    Whether PurFoods' response to the Data Breach was adequate;

e.    Whether PurFoods unlawfully lost or disclosed Plaintiffs' and Class Members' Private Information;

f.   Whether PurFoods failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the Private Information compromised in the Data Breach;

g.   Whether PurFoods' data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

h.   Whether PurFoods' data security systems prior to and during the Data Breach were consistent with industry standards;

i.   Whether PurFoods owed a duty to Class Members to safeguard their Private Information;

j.   Whether PurFoods breached its duty to Class Members to safeguard their Private Information;

k.   Whether hackers obtained Class Members' Private Information via the Data Breach;

l.   Whether PurFoods had a legal duty to provide timely and accurate notice of the Data Breach to Plaintiffs and the Class Members;

m.   Whether PurFoods breached its duty to provide timely and accurate notice of the Data Breach to Plaintiffs and Class Members;

n.   Whether PurFoods knew or should have known that its data security systems and monitoring processes were deficient;

o.   What damages Plaintiffs and Class Members suffered as a result of PurFoods' misconduct;

p.   Whether PurFoods' conduct was negligent;

q.   Whether PurFoods' conduct was *per se* negligent;

r.  Whether PurFoods was unjustly enriched;

s.  Whether Plaintiffs and Class Members are entitled to actual and/or statutory damages;

t.  Whether Plaintiffs and Class Members are entitled to additional credit or identity monitoring and monetary relief; and

u.  Whether Plaintiffs and Class Members are entitled to equitable relief, including injunctive relief, restitution, disgorgement, and/or the establishment of a constructive trust.

142.  <u>Typicality</u>. Plaintiffs' claims are typical of those of other Class Members because Plaintiffs' Private Information, like that of every other Class Member, was compromised in the Data Breach. Plaintiffs' claims are typical of those of the other Class Members because, *inter alia*, all Class Members were injured through the common misconduct of PurFoods. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all other Class Members, and there are no defenses that are unique to Plaintiffs. The claims of Plaintiffs and those of Class Members arise from the same operative facts and are based on the same legal theories.

143.  <u>Adequacy of Representation</u>. Plaintiffs will fairly and adequately represent and protect the interests of Class Members. Plaintiffs' counsel is competent and experienced in litigating class actions, including data privacy litigation of this kind.

144.  <u>Predominance</u>. PurFoods has engaged in a common course of conduct toward Plaintiffs and Class Members in that all of Plaintiffs' and Class Members' data was stored on the same computer systems and unlawfully accessed and exfiltrated in the same way. The common issues arising from PurFoods' conduct affecting Class Members set out above predominate over

any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

145.    <u>Superiority</u>. A Class action is superior to other available methods for the fair and efficient adjudication of this controversy and no unusual difficulties are likely to be encountered in the management of this class action. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a Class action, most Class Members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for PurFoods. In contrast, conducting this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class Member.

146.    Class certification is also appropriate under Fed. R. Civ. P. 23(b)(2). PurFoods has acted and/or refused to act on grounds generally applicable to the Class such that final injunctive relief and/or corresponding declaratory relief is appropriate as to the Class as a whole.

147.    Finally, all members of the proposed Class are readily ascertainable. PurFoods has access to the names and addresses and/or email addresses of Class Members affected by the Data Breach. Class Members have already been preliminarily identified and sent notice of the Data Breach by PurFoods.

## CLAIMS FOR RELIEF

### COUNT I
### NEGLIGENCE
### (ON BEHALF OF PLAINTIFFS AND THE NATIONWIDE CLASS OR ALTERNATIVELY THE CALIFORNIA AND GEORGIA SUBCLASSES)

148.    Plaintiffs restate and reallege all of the allegations stated above as if fully set forth herein.

149.    PurFoods knowingly collected, came into possession of, and maintained Plaintiffs' and Class Members' Private Information, and had a duty to exercise reasonable care in safeguarding, securing, and protecting such Information from being disclosed, compromised, lost, stolen, and misused by unauthorized parties.

150.    PurFoods' duty also included a responsibility to implement processes by which it could detect and analyze a breach of its security systems quickly and to give prompt notice to those affected in the case of a cyberattack.

151.    PurFoods knew or should have known of the risks inherent in collecting the Private Information of Plaintiffs and Class Members and the importance of adequate security. PurFoods was on notice because, on information and belief, it knew or should have known that it would be an attractive target for cyberattacks.

152.    PurFoods owed a duty of care to Plaintiffs and Class Members whose Private Information was entrusted to it. PurFoods' duties included, but were not limited to, the following:

     a.   To exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting Private Information in its possession;

     b.   To protect customers' Private Information using reasonable and adequate security procedures and systems compliant with industry standards;

c.  To have procedures in place to prevent the loss or unauthorized dissemination of Private Information in its possession;

d.  To employ reasonable security measures and otherwise protect the Private Information of Plaintiffs and Class Members pursuant to HIPAA, the FTCA and applicable state laws and regulations, as set forth herein;

e.  To implement processes to quickly detect a data breach and to timely act on warnings about data breaches; and

f.  To promptly notify Plaintiffs and Class Members of the Data Breach, and to precisely disclose the type(s) of information compromised.

153.    PurFoods' duty to employ reasonable data security measures arose, in part, under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

154.    PurFoods' duty also arose because Defendant was bound by industry standards to protect its customers' confidential Private Information.

155.    Plaintiffs and Class Members were foreseeable victims of any inadequate security practices on the part of Defendant, and PurFoods owed them a duty of care to not subject them to an unreasonable risk of harm.

156.    PurFoods, through its actions and/or omissions, unlawfully breached its duty to Plaintiffs and Class Members by failing to exercise reasonable care in protecting and safeguarding Plaintiffs' and Class Members' Private Information within PurFoods' possession.

157.    PurFoods, by its actions and/or omissions, breached its duty of care by failing to provide, or acting with reckless disregard for, fair, reasonable, or adequate computer systems and data security practices to safeguard the Private Information of Plaintiffs and Class Members.

158.    PurFoods, by its actions and/or omissions, breached its duty of care by failing to promptly identify the Data Breach and then failing to provide prompt notice of the Data Breach to the persons whose Private Information was compromised.

159.    PurFoods breached its duties, and thus was negligent, by failing to use reasonable measures to protect Class Members' Private Information. The specific negligent acts and omissions committed by Defendant include, but are not limited to, the following:

    a.    Failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' Private Information;

    b.    Failing to adequately monitor the security of its networks and systems;

    c.    Failing to periodically ensure that its email system maintained reasonable data security safeguards;

    d.    Allowing unauthorized access to Class Members' Private Information;

    e.    Failing to comply with the FTCA;

    f.    Failing to detect in a timely manner that Class Members' Private Information had been compromised; and

    g.    Failing to timely notify Class Members about the Data Breach so that they could take appropriate steps to mitigate the potential for identity theft and other damages.

160.    PurFoods acted with reckless disregard for the rights of Plaintiffs and Class Members by failing to provide prompt and adequate individual notice of the Data Breach such that

Plaintiffs and Class Members could take measures to protect themselves from damages caused by the fraudulent use of the Private Information compromised in the Data Breach.

161.    PurFoods had a special relationship with Plaintiffs and Class Members. Plaintiffs' and Class Members' willingness to entrust PurFoods with their Private Information was predicated on the understanding that PurFoods would take adequate security precautions. Moreover, only PurFoods had the ability to protect its systems (and the Private Information that it stored on them) from attack.

162.    PurFoods' breach of duties owed to Plaintiffs and Class Members caused Plaintiffs' and Class Members' Private Information to be compromised, exfiltrated, and misused, as alleged herein.

163.    As a result of PurFoods' ongoing failure to notify Plaintiffs and Class Members regarding exactly what Private Information has been compromised, Plaintiffs and Class Members have been unable to take the necessary precautions to prevent future fraud and mitigate damages.

164.    PurFoods' breaches of duty also caused a substantial, imminent risk to Plaintiffs and Class Members of identity theft, loss of control over their Private Information, and/or loss of time and money to monitor their accounts for fraud.

165.    As a result of PurFoods' negligence in breach of its duties owed to Plaintiffs and Class Members, Plaintiffs and Class Members are in danger of imminent harm in that their Private Information, which is still in the possession of third parties, will be used for fraudulent purposes.

166.    PurFoods also had independent duties under state laws that required it to reasonably safeguard Plaintiffs' and Class Members' Private Information and promptly notify them about the Data Breach.

167.    As a direct and proximate result of PurFoods' negligent conduct, Plaintiffs and Class Members have suffered damages as alleged herein and are at imminent risk of further harm.

168.    The injury and harm that Plaintiffs and Class Members suffered was reasonably foreseeable.

169.    Plaintiffs and Class Members have suffered injury and are entitled to damages in an amount to be proven at trial.

170.    In addition to monetary relief, Plaintiffs and Class Members are also entitled to injunctive relief requiring PurFoods to, *inter alia*, strengthen its data security systems and monitoring procedures, conduct periodic audits of those systems, and provide lifetime credit monitoring and identity theft insurance to Plaintiffs and Class Members.

**COUNT II**
**NEGLIGENCE *PER SE***
**(ON BEHALF OF PLAINTIFFS AND THE NATIONWIDE CLASS OR**
**ALTERNATIVELY THE CALIFORNIA AND GEORGIA SUBCLASSES)**

171.    Plaintiffs restate and reallege the allegations in the preceding paragraphs as if fully set forth herein.

172.    Pursuant to Section 5 of the FTCA, PurFoods had a duty to provide fair and adequate computer systems and data security to safeguard the Private Information of Plaintiffs and Class Members.

173.    Pursuant to HIPAA, 42 U.S.C. § 1302(d), *et seq*., PurFoods had a duty to implement reasonable safeguards to protect Plaintiffs' and Class Members' Private Information.

174.    Specifically, pursuant to HIPAA, Defendant had a duty to render the electronic PHI it maintained unusable, unreadable, or indecipherable to unauthorized individuals by "the use of an algorithmic process to transform data into a form in which there is a low probability of assigning

meaning without the use of a confidential process or key." *See* definition of "encryption" at 45 C.F.R. § 164.304.

175.    PurFoods breached its duties to Plaintiffs and Class Members under the FTCA and HIPAA by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiffs' and Class Members' Private Information.

176.    Specifically, PurFoods breached its duties by failing to employ industry-standard cybersecurity measures in order to comply with the FTCA, including but not limited to proper segregation, access controls, password protection, encryption, intrusion detection, secure destruction of unnecessary data, and penetration testing.

177.    The FTCA prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice of failing to use reasonable measures to protect PII and PHI (such as the Private Information compromised in the Data Breach). The FTC rulings and publications described above, together with the industry-standard cybersecurity measures set forth herein, form part of the basis of PurFoods' duty in this regard.

178.    PurFoods also violated the FTCA and HIPAA by failing to use reasonable measures to protect the Private Information of Plaintiffs and the Class and by not complying with applicable industry standards, as described herein.

179.    It was reasonably foreseeable, particularly given the growing number of data breaches of Private Information, that the failure to reasonably protect and secure Plaintiffs' and Class Members' Private Information in compliance with applicable laws would result in an unauthorized third-party gaining access to PurFoods' networks, databases, and computers that stored Plaintiffs' and Class Members' unencrypted Private Information.

180.    Plaintiffs and Class Members are within the class of persons that the FTCA and HIPAA are intended to protect and PurFoods' failure to comply with both constitutes negligence *per se*.

181.    Plaintiffs' and Class Members' Private Information constitutes personal property that was stolen due to PurFoods' negligence, resulting in harm, injury, and damages to Plaintiffs and Class Members.

182.    As a direct and proximate result of PurFoods' negligence *per se*, Plaintiffs and the Class have suffered, and continue to suffer, injuries and damages arising from the unauthorized access of their Private Information, including but not limited to damages from the actual misuse of their Private Information and the lost time and effort to mitigate the actual and potential impact of the Data Breach on their lives.

183.    As a direct and proximate result of PurFoods' negligent conduct, Plaintiffs and Class Members have suffered injury and are entitled to compensatory and consequential damages in an amount to be proven at trial.

184.    In addition to monetary relief, Plaintiffs and Class Members are also entitled to injunctive relief requiring PurFoods to, *inter alia*, strengthen its data security systems and monitoring procedures, conduct periodic audits of those systems, and provide lifetime credit monitoring and identity theft insurance to Plaintiffs and Class Members.

**COUNT III**
**BREACH OF CONTRACT**
**(ON BEHALF OF PLAINTIFFS AND THE NATIONWIDE CLASS OR**
**ALTERNATIVELY THE CALIFORNIA AND GEORGIA SUBCLASSES)**

185.    Plaintiffs restate and reallege the allegations in the preceding paragraphs as if fully set forth herein.

186.    Plaintiffs and Class Members entered into a valid and enforceable contract through which they paid money and/or entrusted sensitive and inherently valuable PII and PHI to PurFoods in exchange for services. That contract included promises by Defendant to secure, safeguard, and not disclose such PII and PHI.

187.    PurFoods' Privacy Policy memorialized the rights and obligations of PurFoods and its customers. This document was provided to Plaintiffs and Class Members in a manner in which it became part of the agreement for services.

188.    In the Privacy Policy, PurFoods commits to protecting the privacy and security of private information and promises to never share Plaintiffs' and Class Members' Private Information except under certain limited circumstances.

189.    Plaintiffs and Class Members fully performed their obligations under their contracts with PurFoods.

190.    However, PurFoods did not secure, safeguard, and/or keep private Plaintiffs' and Class Members' Private Information, and therefore PurFoods breached its contracts with Plaintiffs and Class Members.

191.    PurFoods allowed third parties to access, copy, and/or exfiltrate Plaintiffs' and Class Members' Private Information without permission. Therefore, PurFoods breached the Privacy Policy with Plaintiffs and Class Members.

192.    PurFoods' failure to satisfy its confidentiality and privacy obligations, specifically those arising under the FTCA, HIPAA, and applicable industry standards, resulted in PurFoods providing services to Plaintiffs and Class Members that were of a diminished value.

193.    As a result, Plaintiffs and Class Members have been harmed, damaged, and/or injured as described herein, including in Defendant's failure to fully perform its part of the bargain with Plaintiffs and Class Members.

194.    As a direct and proximate result of PurFoods' conduct, Plaintiffs and Class Members suffered and will continue to suffer damages in an amount to be proven at trial.

195.    In addition to monetary relief, Plaintiffs and Class Members are also entitled to injunctive relief requiring PurFoods to, *inter alia*, strengthen its data security systems and monitoring procedures, conduct periodic audits of those systems, and provide lifetime credit monitoring and identity theft insurance to Plaintiffs and Class Members.

<u>**COUNT IV**</u>
**BREACH OF IMPLIED CONTRACT**
**(ON BEHALF OF PLAINTIFFS AND THE NATIONWIDE CLASS OR**
**ALTERNATIVELY THE CALIFORNIA AND GEORGIA SUBCLASSES)**

196.    Plaintiffs restate and reallege the allegations in the preceding paragraphs as if fully set forth herein.

197.    This Count is pleaded in the alternative to Count III above.

198.    PurFoods provides meal delivery services to Plaintiffs and Class Members. Plaintiffs and Class Members formed an implied contract with Defendant regarding the provision of those services through their collective conduct, including by Plaintiffs and Class Members paying for services and/or entrusting their valuable Private Information to Defendant in exchange for such services.

199.    By providing these services to Plaintiffs and Class Members, Defendant knew or should have known that it needed to protect Plaintiffs' and Class Members' confidential Private Information in accordance with its policies, practices, and applicable law.

200.    As consideration, Plaintiffs and Class Members paid money to PurFoods and/or turned over valuable Private Information to PurFoods. Accordingly, Plaintiffs and Class Members bargained with PurFoods to securely maintain and store their Private Information.

201.    PurFoods accepted payment and/or possession of Plaintiffs' and Class Members' Private Information for the purpose of providing services to Plaintiffs and Class Members.

202.    In paying Defendant and/or providing their valuable Private Information to Defendant in exchange for Defendant's services, Plaintiffs and Class Members intended and understood that PurFoods would adequately safeguard the Private Information as part of those services.

203.    Defendant's implied promises to Plaintiffs and Class Members include, but are not limited to, (1) taking steps to ensure that anyone who is granted access to Private Information also protect the confidentiality of that data; (2) taking steps to ensure that the Private Information that is placed in the control of its employees is restricted and limited to achieve an authorized business purpose; (3) restricting access to qualified and trained employees and/or agents; (4) designing and implementing appropriate retention policies to protect the Private Information against criminal data breaches; (5) applying or requiring proper encryption; (6) implementing multifactor authentication for access; (7) complying with HIPAA standards to make sure that Plaintiffs' and Class Members' PHI would remain protected; and (8) taking other steps to protect against foreseeable data breaches.

204.    Plaintiffs and Class Members would not have entrusted their Private Information to PurFoods in the absence of such an implied contract.

205.   Had PurFoods disclosed to Plaintiffs and the Class that it did not have adequate computer systems and security practices to secure sensitive data, Plaintiffs and Class Members would not have provided their Private Information to PurFoods.

206.   As a company entrusted with highly sensitive PII and PHI belonging to its customers, PurFoods recognized (or should have recognized) that Plaintiffs' and Class Member's Private Information is highly sensitive and must be protected, and that this protection was of material importance as part of the bargain with Plaintiffs and the other Class Members.

207.   PurFoods violated these implied contracts by failing to employ reasonable and adequate security measures to secure Plaintiffs' and Class Members' Private Information. PurFoods further breached these implied contracts by failing to comply with its promise to abide by HIPAA.

208.   Additionally, PurFoods breached the implied contracts with Plaintiffs and Class Members by failing to ensure the confidentiality and integrity of electronic protected health information it created, received, maintained, and transmitted, in violation of 45 CFR 164.306(a)(1).

209.   PurFoods also breached the implied contracts with Plaintiffs and Class Members by failing to implement technical policies and procedures for electronic systems that maintain electronic PHI to allow access only to those persons or software programs that have been granted access rights, in violation of 45 CFR 164.312(a)(1).

210.   PurFoods further breached the implied contracts with Plaintiffs and Class Members by failing to implement policies and procedures to prevent, detect, contain, and correct security violations, in violation of 45 CFR 164.308(a)(1).

211.    PurFoods further breached the implied contracts with Plaintiffs and Class Members by failing to identify and respond to suspected or known security incidents; mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity, in violation of 45 CFR 164.308(a)(6)(ii).

212.    PurFoods further breached the implied contracts with Plaintiffs and Class Members by failing to protect against any reasonably anticipated threats or hazards to the security or integrity of electronic protected health information, in violation of 45 CFR 164.306(a)(2).

213.    PurFoods further breached the implied contracts with Plaintiffs and Class Members by failing to protect against any reasonably anticipated uses or disclosures of electronic protected health information that are not permitted under the privacy rules regarding individually identifiable health information, in violation of 45 CFR 164.306(a)(3).

214.    PurFoods further breached the implied contracts with Plaintiffs and Class Members by failing to ensure compliance with the HIPAA security standard rules by its workforce violations, in violation of 45 CFR 164.306(a)(94).

215.    PurFoods further breached the implied contracts with Plaintiffs and Class Members by impermissibly and improperly using and disclosing protected health information that is and remains accessible to unauthorized persons, in violation of 45 CFR 164.502, *et seq*.

216.    PurFoods further breached the implied contracts with Plaintiffs and Class Members by failing to design, implement, and enforce policies and procedures establishing physical administrative safeguards to reasonably safeguard protected health information, in violation of 45 CFR 164.530(c).

217.    PurFoods further breached the implied contracts with Plaintiffs and Class Members by otherwise failing to safeguard Plaintiffs' and Class Members' PHI.

218.    A meeting of the minds occurred, as Plaintiffs and Class Members agreed, *inter alia*, to provide payment and/or accurate and complete Private Information to PurFoods in exchange for PurFoods' agreement to, *inter alia*, provide services that included protection of their highly sensitive Private Information.

219.    Plaintiffs and Class Members have been damaged by PurFoods' conduct, including the harms and injuries arising from the Data Breach now and in the future, as alleged herein.

## COUNT V
### UNJUST ENRICHMENT
### (ON BEHALF OF PLAINTIFFS AND THE NATIONWIDE CLASS OR ALTERNATIVELY THE CALIFORNIA AND GEORGIA SUBCLASSES)

220.    Plaintiffs restate and reallege the allegations in the preceding paragraphs as if fully set forth herein.

221.    This Count is pleaded in the alternative to Counts III and IV above.

222.    Plaintiffs and Class Members conferred a benefit on PurFoods by turning over their Private Information to Defendant and/or by paying for services that should have included cybersecurity protection to protect their Private Information. Plaintiffs and Class Members did not receive such protection.

223.    Upon information and belief, PurFoods funds its data security measures entirely from its general revenue, including from payments made to it by or on behalf of Plaintiffs and Class Members.

224.    As such, a portion of the payments made by or on behalf of Plaintiffs and Class Members is to be used to provide a reasonable and adequate level of data security that is in compliance with applicable state and federal regulations and industry standards, and the amount of the portion of each payment made that is allocated to data security is known to PurFoods.

225.    PurFoods has retained the benefits of its unlawful conduct, including the amounts of payment received from Plaintiffs and Class Members and/or their insurance carriers that should have been used for adequate cybersecurity practices that it failed to provide.

226.    PurFoods knew that Plaintiffs and Class Members conferred a benefit upon it, which PurFoods accepted. PurFoods profited from these transactions and used the Private Information of Plaintiffs and Class Members for business purposes, while failing to use the value of the Private Information and/or the payments it received from Plaintiffs and Class Members for adequate data security measures that would have secured Plaintiffs' and Class Members' Private Information and prevented the Data Breach.

227.    If Plaintiffs and Class Members had known that PurFoods had not adequately secured their Private Information, they would not have agreed to provide such Private Information to Defendant.

228.    Due to PurFoods' conduct alleged herein, it would be unjust and inequitable under the circumstances for PurFoods to be permitted to retain the benefit of its wrongful conduct.

229.    As a direct and proximate result of PurFoods' conduct, Plaintiffs and Class Members have suffered, and/or are at a continued, imminent risk of suffering, injury that includes but is not limited to the following: (i) actual identity theft; (ii) the loss of the opportunity to control how their Private Information is used; (iii) the compromise, publication, and/or theft of their Private Information; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, and/or unauthorized use of their Private Information; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft;

(vi) the continued risk to their Private Information, which remains in PurFoods' possession and is subject to further unauthorized disclosures so long as PurFoods fails to undertake appropriate and adequate measures to protect Private Information in its continued possession; and (vii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the Private Information compromised as a result of the Data Breach for the remainder of the lives of Plaintiffs and Class Members.

230.    Plaintiffs and Class Members are entitled to full refunds, restitution, and/or damages from PurFoods and/or an order proportionally disgorging all profits, benefits, and other compensation obtained by PurFoods from its wrongful conduct. This can be accomplished by establishing a constructive trust from which the Plaintiffs and Class Members may seek restitution or compensation.

231.    Plaintiffs and Class Members may not have an adequate remedy at law against PurFoods, and accordingly, they plead this claim for unjust enrichment in addition to, or in the alternative to, other claims pleaded herein.

## COUNT VI
## BREACH OF FIDUCIARY DUTY
### (ON BEHALF OF PLAINTIFFS AND THE NATIONWIDE CLASS OR ALTERNATIVELY THE CALIFORNIA AND GEORGIA SUBCLASSES)

232.    Plaintiffs restate and reallege the allegations in the preceding paragraphs as if fully set forth herein.

233.    In light of the special relationship between PurFoods and its customers, whereby PurFoods became a guardian of Plaintiffs' and Class Members' Private Information (including highly sensitive, confidential, personal, and other PHI) PurFoods was a fiduciary, created by its undertaking and guardianship of the Private Information, to act primarily for the benefit of its customers, including Plaintiffs and Class Members. This benefit included (1) the safeguarding of

Plaintiffs' and Class Members' Private Information; (2) timely notifying Plaintiffs and Class Members of the Data Breach; and (3) maintaining complete and accurate records of what and where PurFoods' customers' Private Information was and is stored.

234.    PurFoods had a fiduciary duty to act for the benefit of Plaintiffs and the Class upon matters within the scope of its customers' relationship, in particular to keep the Private Information secure.

235.    PurFoods breached its fiduciary duties to Plaintiffs and Class Members by failing to diligently investigate the Data Breach to determine the number of Class Members affected and notify them within a reasonable and practicable period of time.

236.    PurFoods breached its fiduciary duties to Plaintiffs and the Class by failing to protect their Private Information.

237.    PurFoods breached its fiduciary duties to Plaintiffs and Class Members by failing to ensure the confidentiality and integrity of electronic PHI PurFoods created, received, maintained, and transmitted, in violation of 45 CFR 164.306(a)(1).

238.    PurFoods breached its fiduciary duties to Plaintiffs and Class Members by failing to implement technical policies and procedures for electronic information systems that maintain electronic PHI to allow access only to those persons or software programs that have been granted access rights, in violation of 45 CFR 164.312(a)(1).

239.    PurFoods breached its fiduciary duties to Plaintiffs and Class Members by failing to implement policies and procedures to prevent, detect, contain, and correct security violations, in violation of 45 CFR 164.308(a)(1).

240.    PurFoods breached its fiduciary duties to Plaintiffs and Class Members by failing to identify and respond to suspected or known security incidents; mitigate, to the extent

practicable, harmful effects of security incidents that are known to the covered entity, in violation of 45 CFR 164.308(a)(6)(ii).

241.     PurFoods breached its fiduciary duties to Plaintiffs and Class Members by failing to protect against any reasonably-anticipated threats or hazards to the security or integrity of electronic PHI, in violation of 45 CFR 164.306(a)(2).

242.     PurFoods breached its fiduciary duties to Plaintiffs and Class Members by failing to protect against any reasonably-anticipated uses or disclosures of electronic PHI that are not permitted under the privacy rules regarding individually identifiable health information, in violation of 45 CFR 164.306(a)(3).

243.     PurFoods breached its fiduciary duties to Plaintiffs and Class Members by failing to ensure compliance with the HIPAA security standard rules by its workforce, in violation of 45 CFR 164.306(a)(94).

244.     PurFoods breached its fiduciary duties to Plaintiffs and Class Members by impermissibly and improperly using and disclosing PHI that is and remains accessible to unauthorized persons, in violation of 45 CFR 164.502, *et seq.*

245.     As a direct and proximate result of PurFoods' breaches of its fiduciary duties, Plaintiffs and Class Members have suffered and will continue to suffer the harms and injuries alleged herein, as well as anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

### COUNT VII
**VIOLATION OF THE CALIFORNIA CONSUMER PRIVACY ACT OF 2018
CAL. CIV. CODE §§ 1798.100 ET SEQ. ("CCPA")
(ON BEHALF OF THE CALIFORNIA SUBCLASS)**

246.     Plaintiffs reallege and incorporate by reference all preceding paragraphs as if fully set forth herein.

247.    Plaintiff Clements is referred to in this section as "Plaintiff" for purposes of this Count VII.

248.    Section 1798.150(a)(1) of the CCPA provides: "Any consumer whose nonencrypted or nonredacted personal information, as defined [by the CCPA] is subject to an unauthorized access and exfiltration, theft, or disclosure as a result of the business' violation of the duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the personal information may institute a civil action for" statutory or actual damages, injunctive or declaratory relief, and any other relief the court deems proper.

249.    Plaintiff is a "consumer" as defined by Civ. Code § 1798.140(i) because she is a "natural person who is a California resident, as defined in Section 17014 of Title 18 of the California Code of Regulations, as that section read on September 1, 2017."

250.    Defendant is a "business" as defined by Civ. Code § 1798.140(d) because it:

    a.  is a "sole proprietorship, partnership, limited liability company, corporation, association, or other legal entity that is organized or operated for the profit or financial benefit of its shareholders or other owners";

    b.  "collects consumers' personal information, or on the behalf of which is collected and that alone, or jointly with others, determines the purposes and means of the processing of consumers' personal information";

    c.  does business in California; and

    d.  has annual gross revenues in excess of $25 million; annually buys, receives for the business's commercial purposes, sells or shares for commercial purposes, alone or in combination, the personal information of 100,000 or more consumers, households, or devices; or derives 50 percent or more of its annual revenues from selling consumers' personal information.

251.    Plaintiff's PII was subject to unauthorized access and exfiltration, theft, or disclosure because of Defendants' inadequate security measures.

252.    Plaintiff's PII was in nonencrypted and nonredacted form, allowing criminals full access to it.

253.    The Data Breach occurred as a result of PurFood's failure to implement and maintain reasonable security procedures and practices appropriate to the nature of the Private Information. Defendant failed to implement reasonable security procedures to prevent unauthorized access of Plaintiff's and California Subclass Members' Private Information as a result of a cyber-attack.

254.    Plaintiff will provide written notice to Defendant pursuant to Civil Code § 1798.150(b), identifying the specific provisions of the CCPA she alleges Defendant has or is violating. Although a cure is not possible under the circumstances, if as expected Defendant is unable to cure or does not cure the violation within 30 days of receipt, Plaintiff will amend this complaint to pursue actual or statutory damages as permitted by Civil Code § 1798.150(a)(1)(A).

255.    As a result of Defendant's failure to implement and maintain reasonable security procedures and practices that resulted in the Data Breach, Plaintiff seeks injunctive and declaratory relief and any other relief as deemed appropriate by the Court.

<u>COUNT VIII</u>
**VIOLATIONS OF THE CALIFORNIA CONSUMER RECORDS ACT,**
**CAL. CIV. CODE §§ 1798.80, *ET SEQ.***

256.    Plaintiffs restate and reallege the allegations in the preceding paragraphs as if fully set forth herein.

257.    Plaintiff Clements is referred to in this section as "Plaintiff" for purposes of this Count VIII.

258.    Plaintiff brings this claim on behalf of herself and the California Subclass.

259.    "[T]o ensure that personal information about California residents is protected," the

California legislature enacted Cal. Civ. Code § 1798.81.5, which requires that any business that "owns, licenses, or maintains personal information about a California resident shall implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information [Private Information] from unauthorized access, destruction, use, modification, or disclosure."

260.    PurFoods is a business that owns, maintains, and licenses personal information (or "Private Information"), within the meaning of Cal. Civ. Code §§ 1798.80(a) and 1798.81.5(b), about Plaintiff and California Subclass Members.

261.    Businesses that own or license computerized data that includes Private Information are required to notify California residents when their Private Information has been acquired (or is reasonably believed to have been acquired) by unauthorized persons in a data security breach "in the most expedient time possible and without unreasonable delay." Cal. Civ. Code § 1798.82. Among other requirements, the security breach notification must include "the types of personal information [Private Information] that were or are reasonably believed to have been the subject of the breach." Cal. Civ. Code § 1798.82.

262.    PurFoods is a business that owns or licenses computerized data that includes "personal information" [Private Information] as defined by Cal. Civ. Code § 1798.80.

263.    Plaintiff's and California Subclass Members' Private Information includes "personal information" as covered by Cal. Civ. Code § 1798.82.

264.    Because PurFoods reasonably believed that Plaintiff's and California Subclass Members' Private Information was acquired by unauthorized persons during the Data Breach, PurFoods had an obligation to disclose the Data Breach in a timely and accurate fashion as mandated by Cal. Civ. Code § 1798.82.

265.    PurFoods failed to fully disclose material information about the Data Breach, including the types of Private Information impacted.

266.    By failing to disclose the Data Breach in a timely and accurate manner, PurFoods violated Cal. Civ. Code § 1798.82.

267.    PurFoods also violated Cal. Civ. Code § 1798.82 by not publishing a notice of data breach in the format required by Cal. Civ. Code § 1798.82(d)(1).

268.    As a direct and proximate result of PurFoods' violations of the Cal. Civ. Code §§ 1798.81.5 and 1798.82, Plaintiff and California Subclass Members suffered damages, as described above.

269.    Plaintiff and California Subclass Members seek relief under Cal. Civ. Code § 1798.84, including actual damages and injunctive relief.

**COUNT IX**
**VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION ACT,**
**CAL. BUS. & PROF. CODE §§ 17200, *ET SEQ*.**

270.    Plaintiffs restate and reallege the allegations in the preceding paragraphs as if fully set forth herein.

271.    Plaintiff Clements is referred to in this section as "Plaintiff" for purposes of this Count IX.

272.    Plaintiff brings this claim on behalf of herself and the California Subclass.

273.    PurFoods is a "person" as defined by Cal. Bus. & Prof. Code § 17201.

274.    PurFoods violated Cal. Bus. & Prof. Code §§ 17200, *et seq*. ("UCL") by engaging in unlawful, unfair, and deceptive business acts and practices.

275.    PurFoods' "unfair" acts and practices include:

a.    PurFoods failed to implement and maintain reasonable security measures to

protect Plaintiffs' and California Subclass Members' Private Information from unauthorized disclosure, release, data breaches, and theft, which was a direct and proximate cause of the Data Breach.

b.    PurFoods failed to identify foreseeable security risks, remediate identified security risks, and sufficiently improve security following previous cybersecurity incidents, as described herein. This conduct, with little if any utility, is unfair when weighed against the harm to Plaintiff and California Subclass Members, whose Private Information has been compromised.

c.    PurFoods' failure to implement and maintain reasonable security measures also was contrary to legislatively declared public policy that seeks to protect consumers' data and ensure that entities that are trusted with it use appropriate security measures. These policies are reflected in laws, including the FTC Act, 15 U.S.C. § 45, California's Consumer Records Act, Cal. Civ. Code § 1798.81.5, and California's Consumer Privacy Act, Cal. Civ. Code § 1798.100.

d.    PurFoods' failure to implement and maintain reasonable security measures also resulted in substantial consumer injuries, as described above, that are not outweighed by any countervailing benefits to consumers or competition. Moreover, because consumers could not have known of PurFoods' grossly inadequate security, consumers could not have reasonably avoided the harms that PurFoods caused.

e.    PurFoods engaged in unlawful business practices by violating Cal. Civ. Code § 1798.82.

276.    PurFoods has engaged in "unlawful" business practices by violating multiple laws, including California's Consumer Records Act, Cal. Civ. Code §§ 1798.81.5 (requiring reasonable data security measures) and 1798.82 (requiring timely breach notification), California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1780, et seq., the FTC Act, 15 U.S.C. § 45,

and California common law.

277.   PurFoods' unlawful, unfair, and deceptive acts and practices include:

a.   Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff's and California Subclass Members' Private Information, which was a direct and proximate cause of the Data Breach;

b.   Failing to identify and remediate foreseeable security and privacy risks and sufficiently improve security and privacy measures despite knowing the risk of cybersecurity incidents, which was a direct and proximate cause of the Data Breach;

c.   Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and California Subclass Members' Private Information, including duties imposed by the FTC Act, 15 U.S.C. § 45, which was a direct and proximate cause of the Data Breach;

d.   Misrepresenting that it would protect the privacy and confidentiality of Plaintiff's and California Subclass Members' Private Information, including by implementing and maintaining reasonable security measures;

e.   Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and California Subclass Members' Private Information, including duties imposed by the FTC Act, 15 U.S.C. § 45;

f.   Omitting, suppressing, and concealing the material fact that it did not properly secure Plaintiff's and California Subclass Members' Private Information;

g.   Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and California Subclass Members' Private Information, including duties imposed by the FTC Act,

15 U.S.C. § 45, California's Consumer Privacy Act, Cal. Civ. Code § 1798.100, California's Consumer Records Act, Cal. Civ. Code § 1798.80, *et seq.*, and § 1798.81.5, which was a direct and proximate cause of the Data Breach; and

       h.    Failing to provide the Notice of Data Breach required by Cal. Civ. Code § 1798.82(d)(1).

278.    PurFoods' representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of PurFoods' data security and ability to protect the confidentiality of consumers' Private Information.

279.    As a direct and proximate result of PurFoods' unfair, unlawful, and fraudulent acts and practices, Plaintiff and California Subclass Members were injured and suffered monetary and non-monetary damages, as described herein, including but not limited to time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; loss of value of their Private Information; loss of the value of access to their Private Information; and the value of identity protection services made necessary by the Data Breach.

280.    PurFoods acted intentionally, knowingly, and maliciously to violate California's Unfair Competition Law, and recklessly disregarded Plaintiff's and California Subclass Members' rights.

281.    Plaintiff and California Subclass Members seek all monetary and non-monetary relief allowed by law, including restitution of all profits stemming from PurFoods' unfair, unlawful, and fraudulent business practices or use of their Private Information; declaratory relief; reasonable attorneys' fees and costs under California Code of Civil Procedure § 1021.5; injunctive relief; and other appropriate equitable relief.

**COUNT X**
**VIOLATIONS OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT,**
**CAL. CIV. CODE §§ 1750, *ET SEQ.***

282.    Plaintiffs restate and reallege the allegations in the preceding paragraphs as if fully set forth herein.

283.    Plaintiff Clements is referred to in this section as "Plaintiff" for purposes of this Count X.

284.    The Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* ("CLRA") is a comprehensive statutory scheme that is to be liberally construed to protect consumers against unfair and deceptive business practices in connection with the conduct of businesses providing goods, property or services to consumers primarily for personal, family, or household use.

285.    PurFoods is a "person" as defined by Civil Code §§ 1761(c) and 1770 and has provided "services" as defined by Civil Code §§ 1761(b) and 1770.

286.    Plaintiff and the California Subclass are "consumers" as defined by Civil Code §§ 1761(d) and 1770 and have engaged in a "transaction" as defined by Civil Code §§ 1761(e) and 1770.

287.    PurFoods' acts and practices were intended to and did result in the sales of products and services to Plaintiff and the California Subclass Members in violation of Civil Code § 1770, including by:

        a.    Representing that goods or services have characteristics that they do not have;

        b.    Representing that goods or services are of a particular standard, quality, or grade when they were not;

        c.    Advertising goods or services with intent not to sell them as advertised; and

d.    Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

288.    PurFoods' representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of PurFoods' data security and ability to protect the confidentiality of consumers' Private Information.

289.    Had PurFoods disclosed to Plaintiff and California Subclass Members that its data systems were not secure and, thus, were vulnerable to attack, it would have been unable to continue in business and it would have been forced to adopt reasonable data security measures and comply with the law. PurFoods was trusted with sensitive and valuable Private Information regarding hundreds of thousands of customers, including Plaintiff and California Subclass Members. PurFoods accepted the responsibility of protecting the data but kept the inadequate state of its security controls secret from the public. Accordingly, Plaintiff and California Subclass Members acted reasonably in relying on PurFoods' misrepresentations and omissions, the truth of which they could not have discovered.

290.    As a direct and proximate result of PurFoods' violations of California Civil Code § 1770, Plaintiff and California Subclass Members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, as described herein, including but not limited to time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; loss of value of their Private Information; overpayment for PurFoods' services; loss of the value of access to their Private Information; and the value of identity protection services made necessary by the Data Breach.

291.    Plaintiff and the California Subclass seek injunctive relief, including an order

enjoining the acts and practices described above, attorneys' fees, and costs under the CLRA. Pursuant to Cal. Civ. Code § 1782(a), Plaintiff served PurFoods with notice of its alleged violations of the CLRA by certified mail return receipt requested. If, within thirty days after the date of such notification, PurFoods fails to provide appropriate relief for their violations of the CLRA, Plaintiff will amend this Complaint to seek damages.

**COUNT XI**
**DECLARATORY JUDGMENT**
**(ON BEHALF OF PLAINTIFFS AND THE NATIONWIDE CLASS OR**
**ALTERNATIVELY THE CALIFORNIA AND GEORGIA SUBCLASSES)**

292.    Plaintiffs restate and reallege the allegations in the preceding paragraphs as if fully set forth herein.

293.    Under the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and to grant further necessary relief. Furthermore, the Court has broad authority to restrain acts that are tortious and violate the terms of the federal laws and regulations and state statutes described in this Complaint.

294.    PurFoods owes a duty of care to Plaintiffs and Class Members, which required it to adequately secure Plaintiffs' and Class Members' Private Information.

295.    PurFoods still possesses Private Information regarding Plaintiffs and Class Members.

296.    Plaintiffs allege that PurFoods' data security measures remain inadequate. Furthermore, Plaintiffs continue to suffer injury as a result of the compromise of their Private Information and the risk remains that further compromises of their Private Information will occur in the future.

297.    Under its authority pursuant to the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

a.  PurFoods owes a legal duty to secure its customers' Private Information and to timely notify them of a data breach under the common law, HIPAA, and the FTCA;

b.  PurFoods' existing security measures do not comply with its explicit or implicit contractual obligations and duties of care to provide reasonable security procedures and practices that are appropriate to protect customers' Private Information; and

c.  PurFoods continues to breach this legal duty by failing to employ reasonable measures to secure customers' Private Information.

298.    This Court should also issue corresponding prospective injunctive relief requiring PurFoods to employ adequate security protocols consistent with legal and industry standards to protect customers' Private Information, including the following:

a.  Order PurFoods to provide lifetime credit monitoring and identity theft insurance to Plaintiffs and Class Members.

b.  Order that, to comply with Defendant's explicit or implicit contractual obligations and duties of care, PurFoods must implement and maintain reasonable security measures, including, but not limited to:

i.    engaging third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on PurFoods' systems on a periodic basis, and ordering PurFoods to promptly correct any problems or issues detected by such third-party security auditors;

ii.       engaging third-party security auditors and internal personnel to run automated security monitoring;

iii.     auditing, testing, and training its security personnel regarding any new or modified procedures;

iv.     segmenting its user applications by, among other things, creating firewalls and access controls so that if one area is compromised, hackers cannot gain access to other portions of PurFoods' systems;

v.      conducting regular database scanning and security checks;

vi.     routinely and continually conducting internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach; and

vii.    meaningfully educating its customers about the threats they face with regard to the security of their Private Information, as well as the steps they should take to protect themselves.

299.    If an injunction is not issued, Plaintiffs will suffer irreparable injury and will lack an adequate legal remedy to prevent another data breach at PurFoods. The risk of another such breach is real, immediate, and substantial. If another breach at PurFoods occurs, Plaintiffs will not have an adequate remedy at law because many of the resulting injuries are not readily quantifiable.

300.    The hardship to Plaintiffs if an injunction does not issue exceeds the hardship to PurFoods if an injunction is issued. Plaintiffs will likely be subjected to substantial, continued identity theft and other related damages if an injunction is not issued. On the other hand, the cost of PurFoods' compliance with an injunction requiring reasonable prospective data security

measures is relatively minimal, and PurFoods has a pre-existing legal obligation to employ such measures.

301.    Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by preventing a subsequent data breach at PurFoods, thus preventing future injury to Plaintiffs and other customers whose Private Information would be further compromised.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the Class described above, seek the following relief:

a.  An order certifying this action as a Class action under Fed. R. Civ. P. 23, defining the Class as requested herein, appointing the undersigned as Class counsel, and finding that Plaintiffs are proper representatives of the Nationwide Class and California and Georgia Subclasses requested herein;

b.  Judgment in favor of Plaintiffs and Class Members awarding them appropriate monetary relief, including actual damages, statutory damages, equitable relief, restitution, disgorgement, and statutory costs;

c.  An order providing injunctive and other equitable relief as necessary to protect the interests of the Class as requested herein;

d.  An order instructing PurFoods to purchase or provide funds for lifetime credit monitoring and identity theft insurance to Plaintiffs and Class Members;

e.  An order requiring PurFoods to pay the costs involved in notifying Class Members about the judgment and administering the claims process;

f.  A judgment in favor of Plaintiffs and Class Members awarding them prejudgment and post-judgment interest, reasonable attorneys' fees, costs, and expenses as allowable by law; and

g.  An award of such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all triable issues.

DATED: September 6, 2023          Respectfully submitted,

**SHINDLER, ANDERSON, GOPLERUD & WEESE P.C.**

/s/ J. Barton Goplerud
J. Barton Goplerud
Brian O. Marty
5015 Grand Ridge Drive, Suite 100
West Des Moines, IA 50265
Tel: (515) 223-4567
Fax: (515) 223-8887
goplerud@sagwlaw.com
marty@sagwlaw.com

**SIRI & GLIMSTAD LLP**
Mason A. Barney (*pro hac vice* to be filed)
Tyler J. Bean (*pro hac vice* to be filed)
745 Fifth Avenue, Suite 500
New York, New York 10151
Tel: (212) 532-1091
E: mbarney@sirillp.com
E: tbean@sirillp.com